**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL R. OLMSTEAD,**

                **Plaintiff,**　　　　　　　　5:07-cv-948
　　　　　　　　　　　　　　　　　　　　　　　　**(GLS)**

            v.

**MICHAEL J. ASTRUE,** Commissioner
of Social Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky, Shurtliff Law Firm | JAYA SHURTLIFF, ESQ. |
| 300 South State Street, 5th Floor | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ANDREEA L. LECHLEITNER |
| United States Attorney | Special Assistant U.S. Attorney |
| 445 Broadway | |
| James T. Foley U.S. Courthouse | |
| Albany, NY 12207-2924 | |
| | |
| MARY ANN SLOAN | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Michael Olmstead challenges the Commissioner of Social Security's denial of supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Olmstead's complaint.

## II. Background

On February 17, 2005, Olmstead filed an application for SSI under the Social Security Act, alleging disability beginning on January 15, 2005, due to musculoskeletal and mental impairments.  (Tr.[1] at 66-68; *see also* Tr. at 37.)  After his application was denied, Olmstead requested a hearing before an Administrative Law Judge (ALJ), which was held on September 26, 2006.  (Tr. at 519-39.)  On December 11, 2006, the ALJ issued a decision denying the requested benefits, (Tr. at 37-43), which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (Tr. at 5-7.)

---

[1] "(Tr. )" refers to the page of the administrative transcript in this case.

Olmstead commenced the present action by filing a complaint on September 13, 2007, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 10.)

### III. Contentions

Olmstead contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards. Specifically, Olmstead claims that the ALJ: (1) erred in finding Olmstead's mental impairments non-severe; (2) failed to follow the treating physician rule in evaluating Olmstead's residual functional capacity (RFC); and (3) did not apply the correct legal standard in assessing Olmstead's history of drug and alcohol abuse. (*See* Pl. Br. at 12-21, Dkt. No. 9.) The Commissioner counters that substantial evidence supports the ALJ's decision. (*See* Def. Br. at 7-21, Dkt. No. 10.)

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 3-11, Dkt. No. 9; Def. Br. at 1-2, Dkt. No. 10.)

3

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### VI. Discussion

### A. Severity of Mental Impairments and Materiality of Drug & Alcohol Abuse

The regulations require an ALJ first to determine whether a claimant is disabled under the guidelines' five-step approach[2] *before* "segregating out any effects that might be due to substance use disorders." *Day v. Astrue*, No. 07-cv-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan. 3, 2008) (citation and internal quotation marks omitted). As part of this five-step approach, the ALJ must determine whether the claimant's impairments are severe. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that

---

[2] *See* 20 C.F.R. § 404.1520.

4

the claimant is disabled under the five-step approach, the ALJ must then analyze whether the claimant's alcohol abuse and dependency "is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a); *see also* 42 U.S.C. § 423(d)(2)(C); *Orr v. Barnhart*, 375 F. Supp. 2d 193, 201 (W.D.N.Y. 2005) ("[T]he ALJ must ... only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol.").

Here, the ALJ made the threshold finding that as of the alleged date of disability, Olmstead "has had severe mental and musculoskeletal impairments." (Tr. at 42; *see also* Tr. at 40 ("Although [Olmstead] has a history of musculoskeletal and mental impairments, said impairments fail to meet or equal the level of severity of any disabling disorder identified in [20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d)].").) Thus, the ALJ's decision itself controverts Olmstead's assertion that his mental impairments were found non-severe at step two of the sequential analysis. Accordingly, insofar as Olmstead's argument is premised on the ALJ's finding of non-severity, it is meritless.

As to Olmstead's argument that the ALJ's finding of materiality regarding alcohol and drug abuse was improper, the court finds this

argument both legally and factually unsupported. Contrary to Olmstead's assertions, the ALJ engaged in the five-step disability analysis and *then* evaluated the effects Olmstead's drug and alcohol abuse had on his impairments and limitations. (Tr. at 40-42.) And under the appropriate legal standard set forth by 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 416.935, the ALJ determined that Olmstead's drug and alcohol abuse was a "material factor contributing to [his] disability" and that "but for his history of drug and alcohol abuse ... [he] has retained the ability to perform a wide range of heavy work." (Tr. at 40-42.) Therefore, because this finding was made pursuant to the appropriate legal framework and is overwhelmingly supported by the medical and non-medical evidence on record, the court rejects Olmstead's arguments regarding his drug and alcohol abuse.

**B.    Treating Physician Rule**

Generally, the opinion of a treating physician is given controlling weight if it is based on well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). An ALJ may not arbitrarily substitute his own judgment for a competent

6

medical opinion.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Where controlling weight is not given to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot work [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions ...."  *Snell*, 177 F.3d at 133.   Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See*

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Olmstead contends that podiatrist Dr. Maurice Gelia's opinion was entitled to controlling weight, and that, in appraising Dr. Gelia's opinion to be of "limited probative value," the ALJ violated the treating physician rule. (*See* Pl. Br. at 17, Dkt. No. 9.)  The court disagrees.

Dr. Gelia first examined Olmstead on December 23, 2005.  (Tr. 421-22.)  Based on his examination, which revealed that Olmstead had "severe hallux limitus bilaterally with significant pain on palpation with attempted range of motion," Dr. Gelia determined that Olmstead should undergo fusion surgery of the first metacarpophalangeal joint (MPJ) of his right and left great toes.  (Tr. at 422.)  Otherwise, Dr. Gelia found Olmstead "essentially healthy with no underlying medical complaints outside of alcohol dependence and hypertension." (*Id.*)  On January 26, 2006, Olmstead underwent fusion surgery of the first MPJ of his right foot.  (Tr. at , 387-89, 397-406; *see also* Gelia Mar. 2, Mar 17, & Apr. 28, 2006 Post-Operation Notes, Tr. at 305, 343, 350 (noting some ache at surgery site, no complaints otherwise, and steady increase in weight-bearing capabilities).)  And on June 15, 2006, Dr. Gelia performed the same surgery on Olmstead's left great toe.  (Tr. at 265-72; *see also* Gelia June 30, July 20,

8

& Aug. 31, 2006 Post-Operation Notes, Tr. at 253-54, 256, 262 (noting edema within normal limits and minimal motion in first MPJ of left great toe, but otherwise "doing well"); Gelia Sept. 29, 2006 Post-Operation Notes, Tr. at 251 (noting that Olmstead is "doing well" and has "no complaints of pain with walking").)

On September 29, 2006, approximately fifteen weeks after Olmstead's second fusion surgery, Dr. Gelia completed a "Medical Source Statement" in which he evaluated Olmstead's physical limitations. (Tr. at 177-81.) In assessing Olmstead's pain, which was associated with weight bearing, Dr. Gelia stated that it was "sharp to dull ache[,] constant [and] moderate to severe," and that it is "often" severe enough to interfere with Olmstead's attention and concentration. (Tr. at 177.) Dr. Gelia further opined that in a competitive work situation, Olmstead could "frequently" lift and carry less than ten pounds; could "occasionally" lift and carry ten to twenty pounds; could "rarely" lift and carry fifty pounds; could walk up to six blocks without needing rest or experiencing severe pain; could sit for more than two hours at a time; could stand for one hour at a time; could stand and walk for two hours and sit for four hours during an eight-hour day; and would need to walk around multiple times during an eight-hour day. (Tr. at

9

178-79.)  Dr. Gelia also noted that, during an eight-hour day, Olmstead could "occasionally" twist, stoop, bend, and climb stairs, but could "rarely" crouch or climb ladders.  (Tr. at 180.)  In conclusion, Dr. Gelia estimated that Olmstead's impairments would "never" cause him to be absent from work.  (*Id.*)

In light of the scope and nature of Dr. Gelia's treatment and the accompanying treatment notes, it was more than reasonable for the ALJ to conclude that "the restrictions imposed by Dr. Gelia applied only to the immediate post-operative recovery period ... [and] do not reflect [Olmstead's] current level of functioning."  (Tr. at 41.)  Dr. Gelia's notes themselves suggest that the fusion surgery on Olmstead's right foot was successful and that he steadily recovered and regained full weight-bearing capabilities.  The notes covering the same length of time after the left foot fusion surgery suggest similar positive results.  (*Compare* Tr. at 305, 343, 350, *with* Tr. at 251, 253-54, 256, 262.)  Thus, because Dr. Gelia's treatment notes forecast Olmstead's ultimate recovery despite some short-term post-surgical symptoms, the ALJ found that "there is no reasonable expectation that [Olmstead's] limitations would persist for a continuous period of 12 months."  (Tr. at 41.)  In other words, although his assessment

10

may have been temporally limited and therefore limited in its overall probativeness, Dr. Gelia's notes generally are not inconsistent with the ALJ's findings.

Regardless, the remaining medical and non-medical evidence supports both the ALJ's limited reliance on Dr. Gelia's opinion and the ALJ's ultimate RFC assessment.

While the Veterans Affairs Medical Center (VAMC) progress notes from 2005 and 2006 regularly catalog Olmstead's problems regarding his foot and right shoulder, (Tr. at 389, 432, 450, 460-61, 464-65, 475, 477-78, 484, 495, 506), the VAMC medical staff consistently found that Olmstead felt good with no other concerns; exhibited normal affect, orientation, alertness, speech, thought processes, cooperation, attention, concentration, insight, and judgment; was able to walk without any apparent pain or distress; had full gross muscle strength in his feet; and showed no signs of acute inflammation in his feet. (*See, e.g.*, Tr. at 296, 389, 430, 461, 463, 465, 478, 482.) Equally important, in supplementing Dr. Gelia's post-surgical notes, which were generally brief but positive, Dr. Mark Finkelstein found "excellent surgical realignment" on February 6, 2006, (Tr. at 375); Dr. Shahnaz Punjani found Olmstead "doing well,"

11

noting that he had lost several pounds as a result of "eating better and joining [a] gym," (Tr. at 373); physical therapist George Barrett found on March 23, 2006, that Olmstead was functionally independent and required no further physical therapy, and that his pain was being medically managed, (Tr. at 334); and Dr. John Sotherden concluded on June 14, 2006, that the "procedure on the right foot [had] good results," (Tr. at 270).

As to his right shoulder, Dr. Michael Holland examined Olmstead on May 13, 2005, and found that he had normal range of motion in his shoulders, with some pain in his right shoulder. (Tr. at 111.) Successive examinations by VAMC staff revealed either similar or improved findings. On February 3, 2006, Dr. Lisa Forgione found that Olmstead had full range of motion in his right shoulder, with some slight tenderness, but no contusion, redness, warmth, or deformity. (Tr. at 380.) During two subsequent examinations on February 7 and March 22, 2006, Dr. Birendra Prasad Sah reported only Olmstead's subjective complaints of shoulder pain, but found no tenderness in Olmstead's right shoulder and attributed the pain to his temporary use of crutches. (Tr. at 337, 370.) Thereafter, on May 15, 2006, Patti-Ann Kick, an orthopedic nurse practitioner, performed an examination of Olmstead's shoulder and found him "fully

12

neurovascularly intact," with no muscular atrophy, full strength, and some range of motion limitation due to an anterior dislocation. (Tr. at 302.) And by September 2006, Olmstead was reporting that his shoulder pain was better and declined to undergo surgery, choosing instead to postpone it until he returned to Florida. (Tr. at 251-53.)

Upon review of the medical evidence and Olmstead's own testimony and submissions, which the ALJ outlined and analyzed in detail, the court finds that substantial evidence supports his findings regarding Olmstead's RFC. The record—including the evidence regarding the various physically demanding activities Olmstead engaged in after his shoulder injury, the daily activities he continued to engage in during the eligibility period, and the manner in which he postponed his surgery indefinitely—supports the ALJ's finding that Olmstead's right shoulder problems were not as acute or limiting as alleged. Furthermore, the medical evidence demonstrates that Olmstead's right-foot surgery was successful and that the results of his left-foot surgery had followed a similar progression. Therefore, the ALJ's finding that Olmstead had "the residual functional capacity to perform a wide range of heavy work, which does not require him to lift heavy weight

13

overhead," (Tr. at 42), is supported by substantial evidence.[3]

## C. Remaining Findings

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Olmstead's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 16, 2010
Albany, New York

_____
United States District Court Judge

---

[3] To the extent Olmstead implicitly argues that the ALJ should have sought additional evidence or clarification from Dr. Gelia, (see Pl. Br. at 17, Dkt. No. 9), such an argument is without merit. Notwithstanding the potential inconsistency between Dr. Gelia's September 29, 2006 post-operation notes, (Tr. at 251 (noting that Olmstead is "doing well" and has "no complaints of pain with walking")), and his "Medical Source Statement," which is also dated September 29, 2006, (Tr. at 177 (noting that Olmstead often experienced severe weight-bearing pain)), the court is satisfied that the record is complete and that the ALJ's decision is supported by substantial evidence.

14